## DICKINSON v. BENTLEY.

**Intoxicating Liquors:** EVIDENCE : STIPULATION : WITNESS EMPLOYED AS DETECTIVE : CREDIBILITY. In an action to abate a liquor nuisance, after plaintiff had served notice of the taking of the deposition of a non-resident witness, the defendant agreed that if said witness was present at the trial, or if his deposition was taken, he would swear to certain enumerated facts, which, if believed, were sufficient to establish plaintiff's cause of action. The stipulation was filed in the case, and it provided that it might be read by the plaintiff as the testimony of said witness in the trial of the cause, and it was so read, and plaintiff rested. Defendant then proved by plaintiff's attorney that he had employed the witness to procure evidence in relation to the violation of the prohibitory liquor law, and paid him a certain sum per day and expenses. *Held*—

(1) That the testimony of the witness, as agreed to, was entitled to the same credit as if he had actually testified to the same facts on the trial or by deposition, and was not to be discredited on the ground that there was no cross-examination.

(2) That the fact that the witness, while in the employment of plaintiff's attorney, ascertained the facts to which it was agreed he would testify, including the fact that in so doing he purchased whiskey at defendant's saloon, was no ground for discrediting his testimony.

(3) That it was error for the district court to refuse an injunction upon the testimony in the case.

*Appeal from Dubuque District Court.*—HON. D. J. LENEHAN, Judge.

FILED, JUNE 4, 1890.

PROCEEDING for the abatement of a saloon nuisance. The cause was submitted to the district court on the following stipulation and evidence:

"E. H. Dickinson
        v.            } In district court, Dubuque
" W. E. Bentley *et al.* } county, Iowa. No. 8,160.

" Stipulation and agreement in reference to the above-named and numbered thirty-five cases. Whereas, notices and interrogatories to take the deposition on commission of Joseph Mercer, of Polk county, Iowa, a witness for plaintiff in each of the foregoing thirty-five cases now pending in the district court of Dubuque county, Iowa, have been made out and served upon counsel for defendant in each of said causes, it is hereby stipulated and agreed, for the purpose of saving the expense of taking such depositions, that said witness, if present at the trial of said causes, or if his depositions were taken, would testify in each case as follows: That his name is Joseph Mercer; is thirty-three years of age; a citizen and resident householder of the city of Des Moines, Iowa; that he knows the saloon kept by each and all of said several defendant saloon-keepers to be situated as alleged and described in the several petitions filed in said causes, respectively, and to have been used by them, respectively, for the sale and keeping for sale of intoxicating liquors as charged in said petition; that between the first day of August, 1888, and the eighteenth day of the same month, he was in each of said saloons, and, whilst so in there, the person in charge of the bar in each sold to said witness Mercer a glass of whiskey, which was poured at the time from a bottle at said bar; that in each of said saloons at that time was posted up an internal revenue retail liquor-dealers' stamp, for the fiscal year 1888; that each of said saloons contained, in addition to the bar, the usual fixtures, furniture, glasses and bottles used in saloons. And, further, said witness would testify that between the fifth and twenty-fifth days of February, 1889, he was again in each of said saloons, except those of Frederick Weland and Manhart & Conebruch, and, whilst so in there, saw persons in each drinking liquor at the bar therein. It is

hereby stipulated and agreed that the foregoing state-
ment may be read in evidence as the testimony of said
witness on the trial of each of said causes, and be enti-
tled to and have the same force and effect as would the
proper deposition of said witness to the same facts if
taken in each of said causes separately. Dubuque,
April 29, 1889.

"FOUKE & LYON and
"McCENEY & O'DONNELL,
"Attorneys for Defendant."

Plaintiff rested. Defendant called S. P. Adams as
a witness, who testified as follows: "I know Joseph
Mercer. He was here, at my instance, to procure evi-
dence in relation to the violation of the prohibitory
law. I paid him three dollars and a half a day for his
services, and paid his expenses in obtaining the evi-
dence. It is admitted that the plaintiff has incurred
no liability for attorney fees, and that the only com-
pensation that the attorney in this case looks to is
whatever costs can be acquired by order of court."
The district court, on the record thus presented, dis-
missed the plaintiff's petition and entered judgment
against him for costs. The plaintiff appeals.

*S. P. Adams*, for appellant.

*Fouke & Lyon* and *McCeney & O'Donnell*, for
appellee.

GRANGER, J.—The action is in equity, and triable
*de novo* in this court, and the only question is as to the
sufficiency of the testimony. The essential averment of
the petition is that the defendant is now employed and
engaged in keeping intoxicating liquors in a saloon and
place with intent to sell the same contrary to law. No
question is made as to the more particular averments of
the petition, unless it be as to time, which we will
notice. Appellant says that "plaintiff does not attempt
to prove his case as alleged, thereby admitting his ina-
bility to do so." It is true the proof shows the sales

by defendant after the first of August, 1888, and not before; and appellant states that the plaintiff "brings his suit on the twenty-second of August, and alleges that in the month of April, 1888, the defendant was engaged in the business of keeping a saloon in Dubuque." If we are to understand by this that there is a fatal variance between the allegations and the proof, it may be said that the difficulty with the argument is that it misstates the record. The petition was filed August 22, 1888, and alleges that "the defendant has established a saloon and place for the keeping of intoxicating liquors * * * in violation of law, and is now engaged in keeping said intoxicating liquors," etc. And again: "That heretofore, since the eighth day of April, 1888, defendant, in the saloon and place aforesaid, by himself, agent, clerk," etc., "has sold, to divers and sundry persons, said intoxicating liquors, contrary to law." The difference between the record and the purpose of the proof as it is, and as presented in argument, is very manifest, and, to our minds, no question for discussion.

We are so thoroughly convinced from the record that the essential allegations of the petition are true, and that relief should be granted,—and that in so finding we must reverse the judgment of the court below,—that we naturally inquire what considerations could have guided the court to its conclusion. Our only advice in this respect is a statement in argument, which is undenied, and which seems to be about the only available ground for denying relief. Appellant makes the following statement as to the action of the court, and appellee, in argument, seems to have the same general view as to the effect of such evidence: "Upon the submission of the case upon the foregoing evidence, the court remarked that he would not grant an injunction upon the uncorroborated testimony of a witness who was employed and paid for procuring evidence, when the witness is not called upon the stand, and no opportunity is had for his cross-examination, and dismissed

the case." It is true that the witness was not in court for cross-examination, but he was absent, and not cross-examined, because of the stipulation of the defendant; and we hardly see how it should operate to discredit a witness, because not cross-examined, if the party whose right it is to cross-examine waives that right. If plaintiff had taken the deposition of Mercer in due form, and defendant had not cross-examined him, would the court presume against the witness because not cross-examined? If not, why should it under a stipulation that the statements should be read, and be entitled to the same force and effect as would the proper deposition of said witness to the same facts? We do not follow this feature of the case further, as we think the learned judge must have overlooked the stipulation in this respect. Any other conclusion is not consistent with an intelligent and conscientious discharge of duty.

If the testimony of the witness is not to be disregarded because of the fact that he was not cross-examined, then we inquire if there is anything in the record to justify a disbelief as to the truth of his statements. If his statements are true, the defendant is surely maintaining the nuisance. The criticisms upon his testimony go to the character of his calling; and that he "was imported from Des Moines for the purpose of manufacturing evidence against defendant." If by "manufacturing evidence" is meant procuring false testimony, and the charge is true, of course no decree should be based upon it, and the court's action in disregarding it was right. What is there to show, in such a sense, that he "manufactured evidence?" Mr. Adams testifies that he came from Des Moines, having been employed to procure testimony in relation to the violation of the prohibitory law. He was to receive $3.50 per day, and all expenses. Is there anything dishonorable or unmanly in a faithful, conscientious discharge of such duty? If thieves were preying upon the possessions of the people, would it be dishonorable for a person to accept employment to procure

the testimony that would result in the conviction of an actual thief? If murderers abound, and their detection is difficult, is an employment that will bring to light the evidence upon which the truth may be known, and the guilty punished, dishonorable? A statement of strong cases wherein good men have no sympathy sometimes aid us to better understand milder ones, as to which the sympathies of men may be divided. We must believe that all good people would commend an employment or service that would result in the prompt and sure punishment of persons guilty of these graver crimes, and such persons would as promptly condemn any employment or service which would result in the punishment of the innocent. Then, as to these graver crimes, we distinguish these employments by the fruits they bear. If good, we approve. If bad, we disapprove. If correct in this, it must be conceded that there is nothing in the employment itself to condemn it, and such an employe, when a witness, is not to be disbelieved because of such employment. Nor is he to be believed because thereof. But he should be subjected to the same tests as other witnesses to determine his credibility, by showing what his employment is, and the terms of it, with his interests and motives for giving testimony, true or false ; and thus his testimony should be weighed. Now, why should not the same rule apply to this class of cases? This witness, Mercer, must be regarded as testifying that he knows the saloon kept by the defendant to have been used by him for the sale and keeping of intoxicating liquor, as charged in the petition. Defendant takes no exception as to the form or manner of the testimony, but by stipulation agrees that it may be given in that way. Must the witness be disbelieved merely because the plaintiff or his attorney employed him to go and see if that was true? Would such a rule be applied in any other case? He further testifies that, on the eighteenth day of August, he bought a glass of whiskey at defendant's bar; that there were the usual saloon fixtures ; government license

for the sale of liquors for 1888; and that in February, 1889, he was present, and saw persons drinking liquor there. Defendant has not attempted to shake the force of such testimony by cross-examination, as he might have done, and has not himself gone upon the witness stand to deny the truth of it. With his property thus in peril, and his building likely to be closed under the proceedings, we must believe he would have spoken the truth, if it would have been in the interest of its protection. We regard the case, upon the whole, as a practical confession of the defendant's guilt.

It is said that, by the purchase of the glass of whiskey, Mercer aided defendant to commit the crime. The statement is of little weight. The purchase was to discover if the defendant was keeping the liquor there for sale. The sale disclosed the character of his place, and that he was maintaining a nuisance before the sale. If Mercer had induced defendant to do the acts which rendered his place a nuisance, with a view to prosecution, the case might be different. He went there to learn if a nuisance was actually in existence, and for that purpose his act was justifiable. The judgment of the district court is reversed, and a decree will be entered in this court granting the prayer of the petition, and for attorney's fees for plaintiff in the sum of seventy-five dollars for both courts. Execution to issue from this court.                                    REVERSED.